UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

CASE NO.:  6:17-CV-01282-RBD-TBS

CLAUDIA FAYNIK,

      Plaintiff,

v.

MAGICAL CRUISES COMPANY, LTD.,
d/b/a DISNEY CRUISE LINE,

      Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO "PLAINTIFF'S MOTION TO COMPEL BETTER RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND FIRST INTERROGATORIES"

Defendant, MAGICAL CRUISE COMPANY, LTD., d/b/a DISNEY CRUISE LINE ("DCL"), by and through undersigned counsel and pursuant to the applicable Florida Rules of Civil Procedure and the Local Rules, respectfully files its Response in Opposition to "Plaintiff's Motion to Compel Better Responses to Plaintiff's First Request for Production and First Interrogatories", and in support thereof states as follows:

### Introduction

DCL opposes "Plaintiff's Motion to Compel Better Responses to Plaintiff's First Request for Production and First Interrogatories" ("Plaintiff's Motion") because the scope of discovery should be limited to the reasonable needs of this passenger case alleging one count of negligence arising from an alleged slip and fall.  At her deposition, Plaintiff testified that she fell in the process of making a "pivot turn" after her daughter let go of her hand.  Plaintiff believes she slipped on a liquid substance, however, she does not know what the substance was, when the substance was allegedly spilled on the floor or how long the substance had been on the floor

prior to her fall.  As discussed in detail below, there is simply no need for the irrelevant, overbroad and excessive discovery that Plaintiff is seeking.  This discovery lacks a connection to the subject incident, is patently overbroad, seeks attorney-client communications and/or seeks documents protected by the work product doctrine.

DCL respectfully submits that further discovery, if any, from Plaintiff should be limited to the reasonable needs of the action.  As Plaintiff  herself acknowledges, in a good faith effort to resolve these discovery issues without court intervention, DCL provided amended and supplemental discovery responses.  However, this discovery is unfavorable to Plaintiff's case so she is seeking even more discovery to delay the inevitable summary disposition of her case.

DCL respectfully requests this Court deny Plaintiff's Motion to Compel Better Responses to Plaintiff's First Request for Production and First Interrogatories.

## Memorandum of Law

### I.    The scope of discovery must be limited to the reasonable needs of the action.

Federal Rule of Civil Procedure 26 defines the scope of discovery in a civil action.  Rule 26 provides in pertinent part as follows:

> …
> (b) **Discovery Scope and Limits**.
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter **that is relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
> (2) *Limitations on Frequency and Extent*.
> …
> (C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

…
(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED.R.CIV.P.26 (2016)(emphasis added).

A trial court has "wide discretion in setting the limits of discovery." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)(citing *Blum v. Gulf Oil Corp.,* 597 F.2d 936, 938 (5th Cir.1979)); *see also Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012)("**the court ... has the authority to confine discovery to the claims and defenses asserted in the pleadings**….")(emphasis added); *Moore v. Potter*, 141 Fed. Appx. 803, 807 (11th Cir. 2005)("Upon motion by a party, and for good cause shown, a district court can limit discovery and make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....")(internal citations omitted).

The Eleventh Circuit has stated that "[j]udicial intervention in discovery should limit the scope to the reasonable needs of the action." *Smith v. Governor for Alabama*, 562 Fed. Appx. 806, 811 (11th Cir. 2014)(citing to *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1306 (11th Cir.2011)). Plaintiff is alleging that she slipped and fell on the *Disney Dream* because "the subject dance floor platform" was unsafe due to 14 different factors. (Doc. 11). She has alleged these 14 different factors in the hopes that she will be able to find DCL negligent for at least one of them. This type of "dart-throwing" pleading should not be rewarded by allowing Plaintiff to continue with her efforts to obtain discovery that goes beyond any reasonable scope. As seen below, DCL's discovery objections are well-founded. The fact that Plaintiff herself can only speculate as to what caused her to fall further warrants denial of Plaintiff's Motion.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

**II.    Interrogatory Number 11 and Request for Production Numbers 12, 14, 16 and 17: Discovery of prior incidents, if any, must be limited to the covered pool decking area of deck 11 aboard the *Disney Dream* for the one (1) year prior to Plaintiff's incident.**

Plaintiff seeks overbroad discovery for DCL's entire fleet.  She seeks discovery of prior incidents involving persons slipping, tripping, losing their balance, and/or falling.   While Plaintiff is correct that the parties agreed to narrow the request to covered pool deckings on deck 11, the parties were unable to agree to limit to the subject ship or to a reasonable time period in view of Plaintiff's testimony that she really does not know what caused her to fall and can only speculate that she fell on some *unknown transitory foreign liquid substance*.

As an initial matter, Plaintiff does not know what the alleged "foreign liquid substance" she observed after her fall was.  Plaintiff testified as follows:

> Q:    What liquid was this?  Was it water or something else other than water?
>
> A:    How would I know?
> …
> Q:    So as you sit here today, you can't tell me if it was water or some other type of liquid?
>
> MR. ARONFELD:  Form.
>
> THE WITNESS:  Not definitively.
>
> Q:    Okay.  And the liquid that you remember seeing when you fell, you don't know what that liquid was?
>
> A:    No.

*See, Deposition Transcript of Plaintiff Claudia Faynik* ("Plaintiff Depo") at p.56, ln. 21-23; p.57, ln. 14-17; p.144, ln. 20-23 attached hereto as Exhibit "A".  Plaintiff cannot say whether the liquid had an odor or what color it was.  *Id*. at p.56, ln. 24 through p.57, ln. 4.  Plaintiff cannot say how long the liquid had been on the floor.  *Id*. at p.58, ln. 18 through p.59, ln. 22.

Second, Plaintiff admits that she cannot say that she tripped on any foreign object on the

CASE NO.:  6:17-CV-01282-RBD-TBS

dance floor:

> Q:     … So my specific question is did you trip on anything on the dance floor?
>
> A:     Probably not as much of a trip as a slip.
>
> Q:     Okay.  So as you sit here today, can you tell me whether or not you actually tripped on anything on the floor?
>
> A:     No.

*Id*. at p.104, ln. 1-7.

Third and of great significance is Plaintiff's testimony describing the events leading up to her fall.  Specifically, Plaintiff's daughter was paving the way for Plaintiff through a crowd of people on the dance floor.  Her daughter was walking "a full arms' length ahead of" Plaintiff, holding her hand.  Plaintiff's daughter let go of her hand, and after a few steps Plaintiff fell while in the process of making a slight pivot turn.  *Plaintiff Depo* at p.104, ln. 8 through p.105, ln. 17; p.108, ln. 16-25.  Despite having traversed the same area as Plaintiff, Plaintiff's daughter did not fall.  *Id*. at p.44, ln. 24 through p.45, ln. 5.

Based upon Plaintiff's own testimony (1) that she believes she slipped on a liquid substance, but does not know what the substance was, when the substance was allegedly spilled on the floor or how long the substance had been on the floor prior to her fall, (2) that she did not trip over any foreign object and (3) that she fell in the process of making a "pivot turn" after her daughter let go of her hand, DCL respectfully submits that her discovery requests for prior incidents fleet wide for a period of five years are overbroad, not reasonably limited in time or scope, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. At most, these requests should be limited to prior incidents, if any, involving any alleged slip and falls on the subject covered pool decking area, deck 11, aboard the *Disney Dream* for the one (1)

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

CASE NO.:  6:17-CV-01282-RBD-TBS

year prior to Plaintiff's incident[1].  Any incidents involving tripping and/or a loss of balance and falling should not be permitted as they have absolutely no relevance to the Plaintiff's allegations of possibly slipping on a transitory, foreign liquid substance[2].  DCL submits that its objections be sustained, and Plaintiff's Motion in this regard be denied.

**A.    Request for Production Number 2: Prior incidents involving allegations of inadequate lighting bear no relevance whatsoever to Plaintiffs claim as Plaintiff concedes that the lighting in the subject area was an open and obvious condition to her.**

In addition to the above patently overbroad prior incidents discovery, Plaintiff also seeks discovery of incidents alleged to have involved "inadequate lighting".  Again, Plaintiff seeks this discovery for DCL's entire fleet and for three years (instead of five) prior to her subject fall.

Plaintiff's Amended Complaint merely alleges without support that DCL "[f]ailed to place warning signs on or around the subject area where foreign objects and/or liquid substance may rest and gather."  Contrary to Plaintiff's allegations, this vague and unsupported statement does not put DCL on notice that "visibility was an issue in this case".  It merely puts DCL on notice that Plaintiff is alleging she should have been warned of the existence of foreign objects and/or liquid substances, neither of which Plaintiff can identify as the cause of her fall.

The Eleventh Circuit has clearly stated that courts have "the authority to confine discovery to the claims and defenses asserted in the pleadings." *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012).  Here, Plaintiff did not place visibility at issue in her Amended Complaint.  Even if she had, Plaintiff concedes that prior to her fall, she could see the floor and the people on the dance floor. *Plaintiff Depo* at p.143, ln. 21 through p.144, ln. 4.

---

[1] DCL's objection to Plaintiff's reference to a basketball court was well-founded, regardless of whether it was a scrivener's error as Plaintiff now alleges.

[2] Plaintiff speculates that she may have slipped on a spilled drink by a passenger. *Plaintiff Depo* at p.61, ln. 20-25. She also admits, however, that she did not need to be warned of the possibility of passengers spilling drinks while on a cruise. *Id.* at at p.172, ln.3-8; p.60, ln. 18-19.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

CASE NO.:  6:17-CV-01282-RBD-TBS

Thus, Plaintiff proceeded to enter an area where it was open and obvious to her that it was allegedly dim or difficult to see, negating as a matter of law any duty to warn by DCL.  *See*, *McClanahan v. NCL (Bahamas) Ltd.*, Case No. 15-24042-CIV-OTAZO-REYES, p.6 (S.D. Fla. 2017) attached hereto as Exhibit "B" (Viewed objectively or subjectively, the "dim lighting at the Stardust Theater was an open and obvious condition."  As a result, the Court found it need not even reach the issue of the shipowner's actual or constructive notice of any risk-creating condition that could have arisen from the lighting as the shipowner did not have a duty to warn in this regard).

Plaintiff's requested discovery of prior incidents is in no way proportional to the facts of this case.  In fact, Plaintiff herself is unable to say what caused her to fall, yet she boldly seeks discovery of slips, trips, and lighting related claims, in her continued effort to find anything that may suggest some negligence on the part of DCL.  The general maritime law is well settled that a carrier does not become liable to a passenger solely because an accident occurs. *Katz v. Cie Generale Transatlantique,* 271 F.2d 590, 590 (4th Cir.1959); *see also Moore v. American Scantic Line, Inc.,* 121 F.2d 767, 768 (2d Cir.1941)(the vessel is not the insurer of the safety of the passengers); *Belden v. Lynch,* 126 So.2d 578, 581 (Fla. 2d DCA 1961) (negligence should not be inferred from the "mere happening of an accident alone").  DCL submits that its objections be sustained, and Plaintiff's Motion in this regard be denied.

**B. The cases Plaintiff relies upon for overbroad production of prior incidents are decidedly different on their facts and circumstances and provide no support for Plaintiff's overbroad and irrelevant discovery requests.**

Plaintiff cites to various cases in support of her request for prior incidents fleet-wide and for three to five years, involving slips, trips and lighting allegations.  Plaintiff ignores "that even applying a relaxed discovery standard [her] prima facie showing for discoverability fails by any

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

CASE NO.:  6:17-CV-01282-RBD-TBS

measure." *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 686 (S.D. Fla. 2016).  In *Ree*, the court noted that Plaintiff's "pending discovery requests [were] not tethered in any way to similar (or even remotely similar) conditions." *Id.*  The request "presumably require[d] production of past injuries involving any type of 'high speed' boat on any navigable ocean waterway, in any area of the world where Defendant travels." *Id.*  The court further stated as follows:

> At the very least, a relevant request tethered to the particular waters where the accident occurred, coupled with the type of vessel involved, would be somewhat similar—and might be enough for discovery purposes. But these requests are not so limited. They seek production of data that is potentially utterly irrelevant from the circumstances of this case. In other words, they are not seeking "similar" incidents in any meaningful way.

> *Id.* at 686.

Similar to *Ree*, the Plaintiff's prior incidents' discovery requests are not tethered in any way to similar (or even remotely similar) conditions as what Plaintiff herself has testified to. She seeks production of data "that is potentially utterly irrelevant from the circumstances of this case."  Specifically, she seeks discovery of prior slips even though she cannot identify what the foreign substance that she may have slipped on was.  She seeks discovery of prior trips even though she did not trip.  She seeks discovery of prior incidents involving lighting allegations even though she could appreciate through the use of her ordinary senses that the subject area was allegedly dim.  Just like in *Ree*, Plaintiff's discovery requests are not seeking "similar incidents" in any meaningful way.  Moreover, fleet-wide discovery is also not warranted based upon the transitory nature of the unknown foreign substance.  Just like in *Ree*, Plaintiff should be prevented from obtaining this facially overbroad discovery that "does not come close to satisfying even a prima facie showing for substantially similar evidence." *Id.* at 687.

The discovery ordered to be produced in the case of *Whelan v. Royal Caribbean Cruises*

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

*Ltd.*, 2013 WL 5583966, *2 (S.D. Fla. 2013) was very specific and was arguably relevant in providing evidence of "notice of passengers tripping on the single step".  The six-year time period was found to be not too remote in time because the step was a fixed object and not a transitory condition as the one alleged in this case (and which Plaintiff cannot even identify). Thus, *Whelan* has no application to the specific facts here.

The discovery ordered to be produced in the case of *Berner v. Carnival Corp.*, 2009 WL 982621 (S.D. Fla. 2009) involved prior assault and/or battery incidents and, just like in *Whelan*, was arguably relevant in providing evidence of "notice" of passenger assaults and/or battery. This relevancy analysis provides no support for the transitory condition alleged in this case (and which Plaintiff cannot even identify).

The case of *Fisher v. Bumbo Int'l Trust*, 2014 WL 12042519, *6 (S.D. Fla. 2014) involved notice of an allegedly defective child car seat.  The requested discovery was found to be discoverable because any prior similar incidents would have "put Defendants on notice that there is a danger children may fall out of the Bumbo seat."   Here and unlike *Fisher*, the Plaintiff cannot identify with any certainty what caused her to fall.  Although Plaintiff did not see any passenger spill any drink prior to her fall, she nevertheless speculates that she likely slipped on an unknown foreign substance, believed to be a spilled drink by a passenger.[3]

Last, the case of *McGarry v. Holland Am. Line-Westours*, 2003 WL 23744635 (W.D. Wash., Feb 6, 2003) likewise provides no support as *McGarry* involved an alleged slip and fall next to a swimming pool, an area where water is known to be tracked by passengers on the deck.

Based upon the above, DCL respectfully requests that Plaintiff's Motion be denied and

---

[3] A jury or trier of fact may not stack inferences to determine that a party had actual knowledge of a dangerous condition, nor is the mere possibility of causation sufficient to establish liability. *Montgomery v. Fla. Jitney Jungle Stores, Inc.*, 281 So. 2d 302, 305-06 (Fla. 1973); *50 State Sec. Serv. Inc. v. Giangrandi*, 132 So. 3d 1128, 1149 (Fla. 3d DCA 2013). If the only way that a jury or trier of fact can find that a party was negligent is by stacking

CASE NO.:  6:17-CV-01282-RBD-TBS

that DCL's objections to Interrogatory Number 11 and Request for Production Numbers 12, 14, 16 and 17 be sustained.

### III.    The prior incident reports and other materials requests are protected by the attorney-client privilege and/or work-product doctrine.

The work product doctrine was created to allow attorneys to make careful and thoughtful preparation for litigation, without fear that their adversaries will unfairly benefit from their efforts. *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). First recognized by the Supreme Court in *Hickman v. Taylor,* the doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). It offers qualified protection for materials that are: (1) a document or a tangible thing, (2) prepared in anticipation of litigation, and (3) by or for a party, or for his representatives. F.R.Civ.P. 26(b)(3); *Parker v. Stone,* No. 3:07–CV–00271 (VLB), 2009 U.S. Dist. LEXIS 33554, *15–16, 2009 WL 1097914, *5–6 (D.Conn. Apr. 21, 2009).

*Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011).  DCL has the burden of establishing the work-product status of its investigative materials.  *Id.* at 639.  DCL can meet this burden by submitting an affidavit "with the underlying facts demonstrating the existence of the privilege."  *Id.*  As discussed in detail in Section III.(A) *infra*, DCL has met its burden.  Specifically, the *Fouche Declaration* discussed below confirms that the work-product privilege applies to DCL's investigative materials for the broad prior incidents which Plaintiff is seeking[4].

### A.    DCL's investigation into prior incidents was done at the direction of legal counsel and in anticipation of litigation.   As a result, these investigative materials are protected work-product.

"The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011).  DCL has done just that

---

inferences, "then a directed verdict is warranted." *Sanders v. ERP Operating Ltd. P'ship*, 157 So. 3d 273, 277 (Fla. 2015).

[4] Plaintiff is not seeking production of the confidential report of investigation, statements or other investigative materials prepared in connection with Plaintiff's incident - - prepared in anticipation of litigation of Plaintiff's

with the *Fouche Declaration* which states in pertinent part as follows:

> 4.     It is DCL's general policy to create a confidential report of incident and/or memorandum for risk management and/or statements and/or photographs and/or other documentation recording relevant information, in anticipation of litigation and as part of DCL's investigation into alleged incidents and claims. The reports and information are prepared at the instruction of DCL's counsel and risk management department.

> 5.     The incident reports, memoranda, statements, photographs and other information obtained are forwarded from DCL's vessels to DCL's Risk Management/Claims Department for further handling and use with the anticipated defense of any claim which arises from the incidents, accidents or injuries.  DCL considers and asserts that these incident reports, statements and other documentation are attorney-client privileged and protected from disclosure by the work-product doctrine.

> 6.     It is DCL's experience that passengers and crew involved in incidents or accidents seek to be compensated for their injuries. DCL's experience has shown that litigation may arise from the incidents and accidents.

*See, Corynne Fouche Declaration* at ¶¶4-6 attached hereto as Exhibit "C".

The *Fouche Declaration* confirms that DCL's investigative materials are undoubtedly protected by the work-product doctrine.  Potential litigation in connection with prior incidents is not just one of the principal purposes for generating an incident report.  It is <u>the</u> principal and primary purpose, done at the specific direction and advice of legal counsel.

Additionally, it is well-settled in maritime cases that the work-product privilege applies to cruise ship incident reports.  *Eisenberg v. Carnival Corp.*, No. 07-22058-CIV, 2008 WL 2946029, at *2-3 (S.D. Fla. July 7, 2008) (citing cases upholding the work product privilege as to cruise ship incident reports and further stating that "[b]ased upon well-established precedent in this circuit and district, [cruise line's] accident/investigative reports are protected by the work product privilege.").  In *Eisenberg*, the Court found that:

> *at least one of the principal purposes for generating these reports is the*

incident.

*preparation of Carnival's defense to litigation if it ensues*. That is sufficient to trigger qualified work product protection. *See, e.g., United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981) ("It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

*Id*. at *2 (emphasis added).

Because the primary motivating purpose for generating DCL's incident reports is to assist DCL and legal counsel for DCL in their defense of any potential claims and litigation that may arise out of reported incidents and accidents, DCL's incident reports and other investigative materials sought by Plaintiff are protected work-product documents.

It is also well-settled that the work-product privilege applies to witness statements taken by a party's attorney or agent in anticipation of litigation.  *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 644 (S.D. Fla. 2011).   In *Bridgewater*, the Court found that the work-product protection applied to witness statements where "the primary motivating purpose behind the solicitation of these two statements was to aid Carnival in possible future litigation."  *Id*. at 644.

**B.     Plaintiff has not carried her burden of establishing both substantial need and undue hardship. Therefore, she is not entitled to DCL's protected work-product investigative materials.**

Plaintiff claims that even if this Honorable Court finds that DCL's incident reports and other investigative materials are protected under the attorney-client privilege and/or work product doctrine, she should nevertheless be entitled to production of same because "the documents affect critical aspects of Plaintiff's allegations, including Defendant's duty to warn and the existence of notice."  Significantly, Plaintiff does not identify what "critical aspects of [her] allegations" are affected by a fleet-wide production of prior incidents having no similarity whatsoever to Plaintiff's claim, as discussed in Section II.(A) and (B), *supra*.  Second, the

speculative nature of Plaintiff's claim makes it difficult to defend against Plaintiff's claim that DCL failed to warn Plaintiff of the existence of a dangerous condition where Plaintiff herself cannot identify what the dangerous condition was.  Furthermore, DCL did warn Plaintiff that the deck "may be wet" and that passengers such as herself should exercise caution.  *See*, (Doc. 37-5 at pp.9-10).  Even assuming that Plaintiff could somehow show that she did in fact slip on an unknown foreign and transitory substance, she still cannot say how this substance got on the floor, how long it had been there before she fell or who caused it to be placed on the deck floor. Under these set of very specific facts, Plaintiff is unable to show substantial need for DCL's privileged information.   Accordingly, Plaintiff's Motion in this respect must also be denied.

**IV.    Interrogatory Numbers 15 and 20 and Request for Production Number 24: Maintenance procedures, repairs, replacements, and/or alterations of the lighting of the subject area where Plaintiff fell are irrelevant and in no way calculated to lead to the discovery of admissible evidence.**

As discussed in Section II.(A), *supra*, Plaintiff's Amended Complaint does not place DCL on notice that "visibility was an issue in this case."  Per the Plaintiff's own testimony, visibility is actually NOT an issue in this case.  As already noted, Plaintiff concedes that prior to her fall, ***she could see the floor and the people on the dance floor***.  *Plaintiff Depo* at p.143, ln. 21 through p.144, ln. 4.   Thus, Plaintiff proceeded to enter an area where it was open and obvious to her that it was allegedly dim or difficult to see, negating as a matter of law any duty to warn by DCL in this regard.  *See*, *McClanahan*.

Maintenance procedures, repairs, replacements, and/or alterations for the lighting at the subject location simply bear no relevance in a case such as this one where Plaintiff has testified (1) that she could see the floor and people on the dance floor, (2) that she was not looking at the floor when she was walking with the assistance of her daughter and (3) that she proceeded to walk with her daughter despite having appreciated with the ordinary use of her senses that the

subject area was allegedly dim.

Additionally, as noted in DCL's objections and setting aside for arguments sake Plaintiff's concession that she was aware of the area's allegedly dim lighting, Plaintiff's Amended Complaint does not allege a failure to provide sufficient lighting on Deck 11. Plaintiff's boilerplate and unsupported allegation that DCL failed to maintain the subject area "in a clean and safe condition" at night time in no way puts DCL on notice that visibility was an issue in the case. As Plaintiff correctly notes, Federal Rule of Civil Procedure 8 and *Twombly* require a statement putting a defendant on fair notice of the claim and the grounds upon which it rests. None of the allegations in Plaintiff's Amended Complaint provide such a fair notice. *See*, *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (courts have "the authority to confine discovery to the claims and defenses asserted in the pleadings.").

Request for Production Number 24, as worded, also seeks subsequent remedial measures as it seeks documents pertaining to repairs, replacements and/or alterations to the lights in the subject area "**since** the date of that accident." DCL reiterates that it had no duty to warn Plaintiff of the lighting at the subject area. However, Plaintiff is apparently trying to establish negligence with evidence of post-incident repairs, if any. It is clear that subsequent remedial measures cannot be used to prove negligence, culpable conduct or a need for a warning. F.R.E. 407; *see also Williams v. Asplundh Tree Expert Co.*, 2006 WL 2868923 (M.D. Fla. 2006) ("Federal Rule of Evidence 407 bars evidence of subsequent remedial measures when offered to prove culpability."). Thus, DCL's objections as to subsequent remedial measures are well-founded and should likewise be sustained.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**V.** **Request for Production Number 13: Plaintiff confirmed at her deposition that she did not trip. Discovery pertaining to "tripping hazards" are therefore of no relevance to this action and can only be geared to harass DCL.**

This is another classic example of the Plaintiff's utter wasting of judicial time and resources.  During the parties' good faith conference on March 29, 2018, Plaintiff's counsel did not raise this request as one where he was challenging DCL's objections.  Nor would DCL have expected this to be a relevant dispute based upon (1) Plaintiff's counsel's representation early on at the parties' case management conference that Plaintiff allegedly slipped on Deck 11 and not that she tripped and (2) Plaintiff's deposition testimony that she did not trip.

The request is overbroad and not reasonably limited in time as it does not limit the request to the time period of Plaintiff's incident.  The request is ambiguous because it does not define "proper inspection" or "dangerous tripping hazards".  Last, the request seeks information that may be protected by the work product doctrine as the request suggests that policies were put in place after discovery of an alleged dangerous condition.

Based upon the above, DCL stands by its objections as Plaintiff has not and cannot identify any alleged "dangerous tripping hazard" in the area where she claims to have fallen. Additionally, Plaintiff appears to be seeking inspection policies for slips although this was not requested in the actual request.   Again, this is a moot issue as DCL has already produced its policy of "Preventing Common Accidents & Injuries – Slips, Trips and Falls".

**VI.** **Request for Production Number 23:  There is no issue or dispute pertaining to the vessel's location or to the weather at the time of Plaintiff's incident. Discovery pertaining to the vessel's deck logs is therefore of no relevance to this action and can only be geared to harass DCL.**

DCL initially objected to this request on the grounds that the request was vague and ambiguous.  Plaintiff is correct that during the parties' discovery conference, Plaintiff clarified that she is seeking production of the vessel's deck logs because this "would have the vessel's

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

specific geographic locations and meteorological information record."  There is no dispute regarding the location of the vessel or even any allegation that weather played any part in the Plaintiff's incident.  Yet, Plaintiff without explanation or good cause demands production of these records because she believes that such records are "usually produced as a matter of course in most maritime personal injury cases."

As discussed herein, the facts and circumstances surrounding Plaintiff's claim govern the scope of and reasonable needs of discovery in this action.  It is irrelevant whether deck logs are produced or not in other maritime personal injury cases which presumably involved a dispute as to vessel location or weather.  DCL's objections must therefore be sustained, and Plaintiff's Motion denied in this regard.

**VII.    Interrogatory Number 7: This discovery request is moot, and Plaintiff nevertheless failed to confer in good faith before seeking court intervention in this regard.**

First and foremost, DCL notes that it produced photos of its warnings signs to Plaintiff.  *See*, (Doc. 37-5 at pp.9-10).   Second, DCL notes that Plaintiff's request with respect to Interrogatory Number 7 is another classic example of the Plaintiff's utter wasting of judicial time and resources.  DCL's proposed confidentiality agreement is needed to expedite the flow of discovery materials and to protect the confidentiality of its documents.  In fact, the Eleventh Circuit has held that district courts may issue protective orders to expedite the flow of discovery material and to protect the confidentiality of documents. *See McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89, 91 (11th Cir. 1989).

Notwithstanding, DCL advised Plaintiff's counsel that it would consider an alternate confidentiality agreement or even a simple written stipulation by Plaintiff that she and her counsel would keep certain documents, produced in discovery, confidential and would not disseminate outside this litigation.  On March 29, 2018, Plaintiff's counsel advised he would

CASE NO.:  6:17-CV-01282-RBD-TBS

submit a counter-confidentiality agreement or stipulation.  He never did.  Instead, Plaintiff filed her Motion to Compel.

DCL's requested confidentiality agreement, at (Doc. 37-6), is needed to protect DCL's trade secrets and policies intended to enhance the safety and security of its guests and crew.  It is not unreasonable for DCL to seek protection of its confidential documents.   To avoid unnecessary motion practice on this limited issue and despite Plaintiff's failure to confer in good faith as noted above, DCL has already produced its policy of "Preventing Common Accidents & Injuries – Slips, Trips and Falls".

However, DCL submits that its closed circuit television policies are sensitive and confidential in nature and cannot be produced without the Plaintiff's execution of its proposed confidentiality agreement.  Ironically, this request and issue (DCL's Supplemental Response to Request for Production Number 6 at Doc. 37-4) was not raised by Plaintiff in her Motion.  Thus, Plaintiff's Motion with regard to Interrogatory Number 7 is moot.

**VIII.   Request for Production Number 3:  Plaintiff completely misses the mark regarding the concerns and limitations raised by DCL in connection with production of the CCTV footage preserved by DCL in anticipation of litigation of Plaintiff's incident.**

First and foremost, DCL notes that Plaintiff either misunderstood or mischaracterizes DCL's position on production of the CCTV footage preserved in anticipation of this litigation. DCL is not, as Plaintiff alleges, "not permitting Plaintiff to view the entire video footage unless Plaintiff agrees to stipulate to a five page confidentiality agreement and a two page affirmation." The very response which Plaintiff quotes to this Court confirms Plaintiff's incorrect assertion.

Moreover, on March 29, 2018, during a lengthy phone call with Plaintiff's counsel, DCL advised that Plaintiff could view the CCTV footage, which does not show Plaintiff's subject fall, at the offices of DCL's counsel and/or Plaintiff's counsel.  DCL further explained that DCL was

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

restricted in providing an actual copy of the video with its required software due to copyright restrictions from the software manufacturer.  DCL assured Plaintiff's counsel that he could privately view the CCTV footage and even offered to take the footage with the software to Plaintiff's counsel's office to view.  Not once, verbally or in discovery responses, did DCL's counsel demand execution of a confidentiality agreement before Plaintiff's counsel could view this footage.  In fact, this specific request to compel was an unexpected surprise as Plaintiff's counsel advised he would need to "think about" how to respond to DCL's offer of viewing the footage, in view of the copyright restrictions discussed.  On March 29, 2018, Plaintiff's counsel advised he would revert on same, but he never did.  Instead, he filed his Motion to Compel production of the CCTV footage.

It is worth noting that the CCTV footage did not capture Plaintiff's incident.  It is a general overview of the area in question and of Plaintiff being transported to the medical center. Last, whether or not the CCTV footage is maintained pursuant to federal law for the prosecution of crimes, is of no consequence to this alleged slip and fall case.

**WHEREFORE**, Defendant respectfully requests this Court (1) deny "Plaintiff's Motion to Compel Better Responses to Plaintiff's First Request for Production and First Interrogatories", (2) sustain DCL's objections to the discovery referenced herein and (3) provide any further relief it deems just and proper.

[SIGNATURE BLOCK AND CERTIFICATE OF SERVICE TO FOLLOW]

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

CASE NO.:  6:17-CV-01282-RBD-TBS

Respectfully Submitted,

/s/ Jerry D. Hamilton
Jerry D. Hamilton, Esq.
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
Karina M. Cerda-Collazo, Esq.
Florida Bar No. 0626775
kcerda@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave, Suite 1200
Miami, Florida 33131-2332
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
*Attorneys for Magical Cruise Company, Ltd. d/b/a
Disney Cruise Line*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2018 the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified via electronic mail.

By: /s/ Jerry D. Hamilton
Jerry D. Hamilton

## SERVICE LIST

| | |
|---|---|
| /s/ Spencer Aronfeld | /s/ Jerry D. Hamilton |
| Spencer Aronfeld, Esq. | Jerry D. Hamilton, Esq. |
| Florida Bar No. 905161 | Florida Bar No. 970700 |
| Aronfeld@aronfeld.com | jhamilton@hamiltonmillerlaw.com |
| Raul G. Delgado, II, Esq. | Karina M. Cerda-Collazo, Esq. |
| Florida Bar No. 94004 | Florida Bar No. 0626775 |
| mhardin@aronfeld.com | kcerda@hamiltonmillerlaw.com |
| Aronfeld Trial Lawyers | Hamilton, Miller & Birthisel, LLP |
| 3132 Ponce de Leon Boulevard | 150 Southeast Second Ave., Suite 1200 |
| Coral Gables, Florida  33134 | Miami, Florida 33131 |
| Telephone: 305-441-0440 | Telephone: 305-379-3686 |
| Facsimile: 305-441-0198 | Facsimile: 305-379-3690 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |